IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HASSAN ADNAN ASSI,

        **Plaintiff,**

v.                                    **Case No. 3:18-cv-00517**

WESTERN REGIONAL JAIL;
SGT. DIAMOND;
SGT. FERGUSON;
CPL. NEAL;
CPL. DAVIS;
LT. HILL;
CPL. ERWIN;
SGT. FLEMING; and
LT. MORRISON,

        **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

In April 2018, Plaintiff, Hassan Adnan Assi ("Plaintiff"), proceeding *pro se* and incarcerated in the Western Regional Jail at Barboursville, West Virginia, filed a Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 2). Pending before the Court is Defendants' Motion to Dismiss Complaint. (ECF No. 34). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons that follow, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss, (ECF No. 34), be **GRANTED**; that the Complaint, (ECF No. 2), be

**DISMISSED**, **with prejudice**; and that this action be removed from the docket of the Court.

## I.  Relevant Facts and Procedural History

In April 2018, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983, asserting that he had been discriminated against due to his disability. (ECF No. 2 at 5). Plaintiff states that he suffers from severe hearing loss and has been denied telephone access due to Defendants' failure to accommodate his disability. (*Id.* at 4-5). Plaintiff asserts that each Defendant has individually failed to assist him and has refused him fair treatment. (*Id.* at 4). For relief, Plaintiff asks "the courts to make sure that this issue is addressed appropriately[,] and I demand fair and equal treatment." (*Id.* at 5). Plaintiff named a number of individual correctional officers in his lawsuit, as well as the Western Regional Jail.[1]

On August 29, 2018, Defendants submitted an Answer to Plaintiff's complaint, denying the allegations contained therein. (ECF No. 26). On August 31, 2018, Plaintiff submitted a Notice of Change of Address, indicating that he had been released from incarceration and now resided in Proctorville, Ohio. (ECF No. 27). A status conference was held on September 26, 2018, attended by Plaintiff and counsel for Defendants. (ECF No. 29). At the status conference, Plaintiff provided further detail regarding his complaint, explaining that he suffered from 60% hearing loss capacity and was unable to use a conventional telephone. Plaintiff stated that he was only able to operate a telephone by utilizing a Text Telephone (TTY) device. However, while he was incarcerated at the

---

[1] The Western Regional Jail is not a legal entity. Rather, the Western Regional Jail is a building owned by the State of West Virginia and operated by the West Virginia Division of Corrections and Rehabilitation ("DCR"). Therefore, the undersigned refers to the legal entity as the DCR in this PF&R.

Western Regional Jail in 2018, he was given no access to such a device and, consequently, was unable to make telephone calls for an extended period of time. Plaintiff also asserted that the jail did not put adequate procedures in place to ensure that Plaintiff was properly notified of meals and activities, resulting in Plaintiff frequently missing meals and activities due to his disability. Plaintiff indicated that he intended to bring his claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Rehabilitation Act, 29 U.S.C. § 794.

At Plaintiff's request, the undersigned entered an Order staying discovery in this case for 60 days to give Plaintiff an opportunity to retain legal counsel. (ECF No. 30). On November 26, 2018, Plaintiff submitted a Notice of Change of Address, indicating that he now resided in Charleston, West Virginia, but did not otherwise provide an update regarding his search for an attorney. (ECF No. 31). On February 12, 2019, the undersigned entered a Scheduling Order providing deadlines for the parties to complete discovery and submit dispositive motions. (ECF No. 32). Plaintiff was given until March 22, 2019 to join any additional parties or amend the complaint. (*Id.* at 1). The deadline for all dispositive motions was set for October 11, 2019. (*Id.* at 2).

On March 1, 2019, Defendants submitted a Motion to Dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 34 at 1-2). In support of their motion, Defendants argue that Plaintiff's claims should be dismissed as the complaint has been rendered moot by Plaintiff's release from the Western Regional Jail. (*Id.* at 3-4). Defendants additionally contend that, as Plaintiff failed to properly exhaust his administrative remedies, dismissal of his suit is required by federal law. (*Id.* at 4). Finally, Defendants argue that the complaint should be dismissed as to the individually named Defendants, because the relevant portion of the ADA does not provide

3

for liability against individuals. (*Id.* at 9).

On March 5, 2019, the undersigned entered an Order directing Plaintiff to file a response to Defendants' Motion to Dismiss by April 1, 2019. (ECF No. 36). In the Order, Plaintiff was warned that "ordinarily, a failure to respond within the allowed time can support a conclusion that Defendants' contentions are undisputed and may result in a dismissal of the complaint." (*Id.* at 1). Plaintiff did not respond to the Motion to Dismiss. Neither party has entered any submission since the Motion to Dismiss was filed on March 1, 2019.

## II.    <u>Standard of Review</u>

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Accordingly, the Court will assume that the facts alleged in the complaint are true and will draw all reasonable inferences in Plaintiff's favor as the nonmoving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir. 1988)).

4

While the Court "take[s] the facts in the light most favorable to the plaintiff, … [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Court are required to liberally construe *pro se* complaints, such as the complaint filed herein. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.   **Discussion**

Plaintiff's complaint is filed pursuant to 42 U.S.C. § 1983, which provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or

usage." 42 U.S.C. § 1983. Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a state and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658. In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of state law. 42 U.S.C. § 1983; *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *Sullivan*, 526 U.S. at 50.

Plaintiff brings this claim under Title II of the ADA and Section 504 of the Rehabilitation Act. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court of the United States ("Supreme Court") has held that Title II of the ADA applies to state prisons. *see Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 118 (1998). Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 29 U.S.C. § 794(a). Because the language of

6

Section 504 of the Rehabilitation Act and Title II of the ADA "is substantially the same," courts "apply the same analysis to both." *Doe v. Univ. of Maryland Med.* Sys. Corp., 50 F.3d 1261, 1265 n. 9 (4th Cir.1995); *see also A Society Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011).

To state a claim for relief under Title II of the ADA, Plaintiff must allege that: (1) he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir.2005) (citations omitted). In general, plaintiffs are entitled to the "full panoply" of legal remedies under Title II of the ADA or § 504 of the Rehabilitation Act, including both injunctive and compensatory relief. *See Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 830 (4th Cir.1994); *see also Torcasio v. Murray*, 57 F.3d 1340, 1342 n. 2 (4th Cir.1995) (recognizing that "remedies available for ADA violations are those available for Rehabilitation Act violations...").

### A. Motion to Dismiss for Failure to Exhaust

As an initial matter, Defendants argue that Plaintiff's complaint should be dismissed as he failed to exhaust his available administrative remedies. (ECF No. 34 at 4). Plaintiff states in his complaint that he "filed several grievances concerning the issue." (ECF No. 2 at 3). He further asserts that he received no relief based on these filings and that the DCR failed to respond to a number of the grievances. (*Id.*). Defendants, by contrast, assert that, while Plaintiff did file a multitude of grievances related to his inability to make telephone calls without a TTY machine, submitting approximately 23 grievances from April 2016 through April 2018, he failed to appeal the written denial he

7

received as to each of these requests in accordance with DCR administrative procedures. (ECF No. 34 at 8-9). Defendants did not submit the underlying documents they refer to with respect to Plaintiff's administrative grievances.

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies prior to filing a complaint in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.") (citations and internal quotation marks omitted). The purpose of the exhaustion requirement is twofold: first, "exhaustion protects administrative agency authority" by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court ... and it discourages disregard of the agency's procedures;" second, "exhaustion promotes efficiency," as claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court" and sometimes "claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89, (2006) (citations and internal quotation marks omitted). Further, "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful

record for subsequent judicial consideration." *Id.*

In *Ross v. Blake*, the Supreme Court considered a case in which a Maryland state inmate filed a § 1983 complaint alleging that a correctional officer used excessive force against him and that another officer failed to take action to protect him. *Ross*, 136 S. Ct. 1850, 1855 (2016). One of the officers raised the PLRA's exhaustion requirement as an affirmative defense, stating that the inmate brought suit without first following the prison's prescribed procedures for obtaining an administrative remedy. *Id.* The district court dismissed the lawsuit for lack of exhaustion, but the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") reversed the decision, stating that the PLRA's exhaustion requirement was "not absolute" and special circumstances could excuse exhaustion, such as when a prisoner reasonably, but mistakenly, believed that he had sufficiently exhausted his administrative remedies. *Id.* at 1856. Upon review, the Supreme Court explicitly rejected the Fourth Circuit's "special circumstances" exception, noting the exhaustion requirement in the PLRA is statutorily mandated and not amenable to judicially created exceptions. *Id.* The Supreme Court explained that the mandatory language of the PLRA meant that a court may not excuse a failure to exhaust, even to take special circumstances into account. *Id.*

Yet, the Supreme Court pointed out in *Ross* that the PLRA does contain one express exception: an inmate need not exhaust "unavailable" remedies. *Id.* at 1858. The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an

administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860. "[S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*

Plaintiff takes issue with events that occurred while he was incarcerated in a West Virginia regional jail. Consequently, he was also required to exhaust his administrative remedies in accordance with the West Virginia Prisoner Litigation Reform Act, W. Va. Code § 25-1A-1, *et seq.*, before filing this federal lawsuit. Even if West Virginia law provides exceptions to the state's exhaustion requirement that are not offered under the PLRA, the federal exhaustion requirements govern this action. Therefore, Plaintiff must have exhausted the state's administrative remedies unless they were unavailable to him. *Freeland v. Ballard*, No. 2:14-CV-29445, 2017 WL 337997, at *3 (S.D.W. Va. Jan. 23, 2017) (collecting cases).

For West Virginia state inmates, exhaustion of administrative remedies for claims involving the general conditions of confinement requires a final decision from "the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee." W. Va. Code § 25-1A-2. At the time Plaintiff filed his complaint, the following grievance procedure governed inmates housed at West Virginia regional jails:

> [I]inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the

rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

See *Green v. Trinity Food Serv.*, No. 3:19-CV-128, 2019 WL 4281921, at \*2 (N.D.W. Va. Aug. 12, 2019), *report and recommendation adopted,* No. 3:19-CV-128, 2019 WL 4280050 (N.D.W. Va. Sept. 10, 2019). As stated, exhaustion of remedies is mandatory and has limited exception. *Porter,* 534 U.S. at 524.

While the record suggests that Plaintiff may not have exhausted his administrative remedies, at this stage of litigation, neither party has developed or produced evidence determinative of the exhaustion issue. Based on the limited record before the Court, and Plaintiff's claim that he submitted grievance forms in compliance with the administrative process that was available to him but did not receive a response, it would be premature to dismiss the complaint for failure to exhaust administrative remedies. *See Custis v. Davis*,

851 F.3d 358, 361–62 (4th Cir. 2017) (discussing that it is a rare, exceptional instance where administrative exhaustion is apparent on the complaint's face and noting that the inmate's statement that he attempted to exhaust his administrative remedies "may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him."); *see also Spradlin v. Rodes*, No. 3:16-CV-06986, 2017 WL 4277150, at *3 (S.D.W. Va. Aug. 31, 2017), *report and recommendation adopted,* No. CV 3:16-6986, 2017 WL 4248849 (S.D.W. Va. Sept. 25, 2017) (same); *White v. Van Duncan*, No. 1:10-cv-014, 2010 WL 2813492, at *2 (W.D.N.C. July 15, 2010) (finding that, based on the limited record and viewing the allegations in the light most favorable to the plaintiff, the plaintiff attempted to utilize the administrative grievance procedure and his grievances were ignored and it would be improper to dismiss the complaint for failure to exhaust, as the issue could be raised later in a motion for summary judgment); *Brightwell v. Hershberger*, No. CV DKC 11-3278, 2016 WL 5815882, at *2 (D. Md. Oct. 5, 2016) ("The practical availability of remedies is not a pure question of law. As the Supreme Court noted when remanding *Ross v. Blake*, determining whether administrative remedies are truly available requires development of a record of facts and evidence relating to whether the administrative process operated as a dead end, whether it was knowable by an ordinary prisoner, and whether officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentation.") (citations omitted). Therefore, the undersigned **FINDS** that Defendants' motion to dismiss on the ground of lack of exhaustion is premature and should be denied.

### B. Dismissal of Individually Named Defendants

Defendants argue that as Title II of the ADA does not provide for liability against

individuals in their personal capacity, the complaint should be dismissed as to each individually-named defendant. (ECF No. 34 at 9-10). Defendants are correct that individuals may not be sued in their personal capacity for violations of the ADA under Title II. The ADA permits lawsuits alleging that an individual suffered from discrimination by a "public entity." *See* 42 U.S.C. § 12131(1). Courts in this district have recognized that "Title II of the ADA does not recognize a cause of action for discrimination by private individuals, only public entities." *Pathways Psychosocial v. Town of Leonardtown, MD*, 133 F. Supp. 2d 772, 780 (D. Md. 2001); *see also Allen v. Carrington*, No. C/A 4:07-797 DCN, 2009 WL 2877557, at *4 (D.S.C. Aug. 28, 2009), *aff'd*, 372 F. App'x 390 (4th Cir. 2010) ("Individual [d]efendants cannot be liable under Title II of the ADA or the Rehabilitation Act in their individual capacities.").

Plaintiff's complaint does not specify whether the individually named defendants are sued in their official or individual capacities. A *pro se* plaintiff bringing a claim pursuant to Section 1983 need "not plead expressly the capacity in which he is suing a defendant[.]" *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir.1995). When not specified, courts determine the capacity in which a defendant is sued by examining "the nature of the plaintiff's claims, the relief sought, and the course of proceedings[.]" *Id.* at 61. The distinction matters little here, however, because the individually named defendants are entitled to dismissal regardless of the capacity in which Plaintiff intends to sue them. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Accordingly, where a plaintiff has named the entity as well as an employee of the entity in her official capacity in a lawsuit, the official-capacity claim may be dismissed as duplicative. *See Love-Lane v. Martin*, 355

F.3d 766, 783 (4th Cir. 2004) (district court was correct to dismiss Superintendent as duplicative when Board of Education was named as a defendant); *see also Latson v. Clarke*, 249 F. Supp. 3d 838, 856 (W.D. Va. 2017) ("Where a plaintiff has named the entity as well, an official-capacity claim can be dismissed as duplicative."); *Adams v. Montgomery Coll. (Rockville)*, 834 F. Supp. 2d 386, 396 (D. Md. 2011) (no need to pursue ADA official capacity claim against employees of college when college named as a defendant).

Here, Plaintiff sued the DCR directly, making any lawsuit against the individual Defendants in their official capacity duplicative.[2] As noted above, the individual Defendants are not amendable to suit under the ADA or Rehabilitation Act in their personal capacity. Accordingly, as regardless of whether Plaintiff sued the individually named Defendants in their personal or official capacity, they are entitled to be dismissed from this lawsuit, the undersigned **FINDS** that the individually named Defendants' request for dismissal should be granted.

### C. Dismissal of Claim as Moot

Defendants contend that Plaintiff's claim should also be dismissed as moot. (ECF No. 34 at 3). Defendants assert that, as Plaintiff requests only injunctive relief, asking that Defendants be ordered to cease and desist their allegedly illegal conduct, his release from

---

[2] The undersigned need not address issues of sovereign immunity, because Defendants have not asserted that doctrine as a ground for dismissal. *See Clowdis v. Silverman,* No. 3:15-cv-128, 2019 WL 1415454, at *12 (E.D. Va. Mar. 28, 2019) ("Given the Fourth Circuit's holding in Hutto that the 'defendant bears the burden of demonstrating' the applicability of Eleventh Amendment immunity, 773 F.3d at 543, the Court concludes that, as to Counts I through III (ADA and Rehabilitation Act claims), the VCU Defendants have failed to satisfy their burden that the Eleventh Amendment applies to them and these Counts. Nowhere in their briefing do the VCU Defendants discuss the ADA's express abrogation of Eleventh Amendment immunity, see 42 U.S.C. § 12202, the Supreme Court's decisions regarding Title II of the ADA's abrogation of the Eleventh Amendment, see <u>United States v. Georgia</u>, 546 U.S. 151 (2006); <u>Tennessee v. Lane</u>, 541 U.S. 509 (2004), or the Fourth Circuit's decision in <u>Constantine</u>, 411 F.3d 474 (4th Cir. 2005) (waiver of sovereign immunity under the Rehabilitation Act)").

prison means that no justiciable controversy exists. (*Id.* at 3-4).

As a prerequisite to the exercise of federal jurisdiction, the complaint before the Court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Defendants are correct that "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir.2007).

An exception to the mootness doctrine exists for claims that are "capable of repetition, yet evading review." *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). However, "[j]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation

or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Incumaa*, 507 F.3d at 289 (internal quotation marks and citations omitted).

While a prisoner's transfer or release moots a request for declaratory and injunctive relief, it does not moot a request for monetary damages. *See Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir.1986); *see also Salmons v. W. Reg'l Jail Auth.*, No. CV 3:18-1447, 2019 WL 5616916, at *4 (S.D.W. Va. Oct. 30, 2019). Defendants assert that as Plaintiff's requested relief "can be safely characterized as a request for declaratory and/or injunctive relief," Plaintiff's release from prison has mooted his claim. (ECF No. 34 at 3). For requested relief, Plaintiff states only, "I want the courts to make sure that this issue is addressed appropriately[,] and I demand fair and equal treatment." (ECF No. 2 at 5). Plaintiff makes no request for compensatory or monetary damages in his complaint. Furthermore, Plaintiff did not respond to Defendants' motion to dismiss which asserts that he did not claim any compensatory damages. Plaintiff was admonished that a failure to respond to the motion to dismiss could result in its allegations being accepted as uncontested and true. (ECF No. 36).

Defendants are correct that Plaintiff does not seek monetary compensation in his complaint. Plaintiff asks merely that his claim be addressed "appropriately," and that he be given "fair and equal treatment." (ECF No. 2 at 5). While Plaintiff's statement does not specify the precise nature of his requested relief, his request for equal treatment does not constitute a request for monetary relief. *See Swanson v. Bledsoe*, No. CIV A 104CV170, 2007 WL 205636, at *3 (N.D.W. Va. Jan. 24, 2007) (denying plaintiff's claim that his complaint was not mooted by transfer due to his request for monetary damages where the plaintiff's complaint did not specifically request monetary damages); *Camacho v. Beers*,

Civil Action No. 16-1644, 2018 WL 6618410, at *2–*3 (W.D. Pa. Dec. 18, 2018) (finding plaintiff's statement in initial grievance "asking for relief as allowed by law" did not "request the specific relief of monetary compensation"). Plaintiff asks for equal treatment with respect to his inability to utilize the telephone system at the Western Regional Jail, clearly contemplating an injunction ordering Defendants to provide Plaintiff with equal access to telephone services. Plaintiff makes no request for monetary compensation in his complaint. Moreover, Plaintiff did not contest Defendants' contention that he is seeking only injunctive relief. Accordingly, the undersigned **FINDS** that Plaintiff's complaint requests only equitable relief and is therefore rendered moot by Plaintiff's release from prison, unless Plaintiff is able to establish that he is entitled to an exception to the mootness doctrine.

As noted, there is an exception to the mootness doctrine for cases that are "capable of repetition, yet evading review." *Wisconsin Right to Life, Inc.*, 551 U.S. at 462. However, to be entitled to utilize this exception, Plaintiff must show, among other things, that there "is a reasonable expectation that [he] will be subject to the same action again." *Incumaa*, 507 F.3d at 289. Plaintiff does not attempt to make such a showing, nor would he be likely to succeed assuming he did endeavor to establish entitlement to this exception. As Plaintiff has been released from the facility wherein the complained of actions took place, to be again subject to the same disparate conditions would require that he again be charged or convicted of a crime by the state of West Virginia, and additionally be assigned to serve a term of incarceration within the Western Regional Jail. This chain of events is far too speculative to establish a reasonable expectation that Plaintiff will again face the discriminatory treatment he alleges occurred at the Western Regional Jail. *See e.g. Slade v. Hampton Roads Reg'l Jail,* 407 F.3d 243, 249 (4th Cir. 2005) ("Because we presume

17

that [the petitioner] will abide by the criminal laws of Virginia in the future, we do not believe there is a reasonable probability that he will return to the Jail. ... Accordingly, [the petitioner's] claim for injunctive relief is moot.").

As it is clear from the face of Plaintiff's complaint that he seeks only equitable relief, the undersigned **FINDS** that Plaintiff's release from prison has mooted his lawsuit because there is no longer a live or justiciable controversy sufficient to satisfy the requirements of Article III. The undersigned accordingly, **RECOMMENDS** that Plaintiff's complaint be dismissed.

## IV.    Proposal and Recommendations

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' Motion for Dismissal, (ECF No. 34); **DISMISS** the complaint, **with prejudice**, (ECF No. 2); and **REMOVE** this matter from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de*

*novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, and counsel of record.

**FILED:** November 21, 2019

Cheryl A. Eifert
United States Magistrate Judge